IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GINA MARIE CROFT,

        Plaintiff,

v.

COMMISSIONER of Social Security,

        Defendant.

Civil No. 3:13-cv-01625-AC

OPINION AND ORDER

TIM WILBORN
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, NV  89137

        Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
RONALD K. SILVER
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR  97201

1 - OPINION AND ORDER -

JORDAN D. GODDARD
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

ACOSTA, Magistrate Judge.

Claimant Gina Maria Croft ("Plaintiff") seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). *See* 42 U.S.C. §§ 1381-83(f). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636 (e). Following a careful review of the record, the Court AFFIRMS the Commissioner's decision.

## PROCEDURAL HISTORY

On November 8, 2010, Plaintiff protectively filed for SSI benefits, alleging disability beginning July 15, 1997, due to neck pain, migraines, and chronic shoulder pain with a limited range of motion. (Tr. 18, 134-44, 163.) The Commissioner denied the claim initially and upon reconsideration. (Tr. 79-83, 85-87.) Plaintiff appeared and testified at a hearing before Administrative Law Judge Wayne N. Araki (the "ALJ"), who issued his decision finding Plaintiff was not disabled. (Tr. 15-31.) Plaintiff timely requested review of the ALJ's decision, and the Appeals Council denied her request, making the ALJ's decision the Commissioner's final decision. (Tr. 1-6.) On September 15, 2013, Plaintiff filed for review of the decision in this court.

## FACTUAL BACKGROUND

Born in 1962, the Plaintiff was 48 years old when she filed her application for disability and 49 years old on the date of the ALJ's decision. (Tr. 134.) She earned a General Equivalence Degree ("GED") and attended some college without completing the requirements of a degree. (Tr. 37.) The Plaintiff worked in the past as a gas station attendant and a production worker. (Tr. 62-64.)

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir.1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir.2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable

3 - OPINION AND ORDER -

physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920, First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 416.920(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work. *Id.* at 142; 20 C.F.R. § 416.920(e) & (f). If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found the Plaintiff had not engaged in substantial gainful activity since November 1, 2010, the protective filing date. (Tr. 20.) At step two, the ALJ found the Plaintiff had the severe impairments of degenerative disc disease of the cervical spine, bilateral degenerative joint disease of the acromioclavicular ("AC") joints, and migraine headaches. (Tr. 20.) At step three, he found the Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 21.)

The ALJ next assessed the Plaintiff's residual functional capacity ("RFC"). He found the Plaintiff had the ability to perform work at the light exertion level, as defined in 20 C.F.R. § 416.967(b), except she was limited to frequent reaching over-the-shoulder bilaterally. (Tr. 21.)

At step four, the ALJ found the Plaintiff was able to perform her past relevant work as a gas station attendant, as actually performed. (Tr. 26.) In the alternative, the ALJ also made a step five determination that the Plaintiff could perform jobs that exist in significant numbers in the national economy, considering her age, education, work experience, and residual functional capacity, pursuant to Rule 202.21 of the Medical Vocational Guidelines (the "Grids"), 20 C.F.R. part 404, Subpart P, Appendix 2. (Tr. 27.) The ALJ therefore concluded that the Plaintiff was not under a disability from November 1, 2010, the date the Plaintiff filed her application, through June 29, 2012, the date of the ALJ's decision. (Tr. 27.)

## DISCUSSION

The Plaintiff argues the ALJ erred in four respects: (1) he improperly rejected the opinion of examining physician Dr. Nolan and of physical therapists Deal and Kershaw, who both performed physical capacity evaluations; (2) he improperly evaluated the Plaintiff's credibility; (3) he improperly rejected testimony of a lay witness; and (4) his step four finding that the Plaintiff was physically and mentally capable of performing her past relevant work and alternative step five finding that Plaintiff could perform other jobs existing in the national economy are not supported by substantial evidence.

### I. The ALJ's Rejection of the Opinions of the Plaintiff's Examining Physician and Physical Therapists

Plaintiff argues the ALJ erred by failing to provide legally sufficient justifications for rejecting the credibility of examining physician Raymond Nolan, M.D., Ph.D., and examining physical therapists Lori Deal, MSPT, and Michelle Kershaw, DPT. The Commissioner contends that the ALJ was fully justified in rejecting these opinions and provided legally sufficient reasons for doing so. The Court agrees with the Commissioner.

#### A. Dr. Nolan

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not

contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1034 (9th Cir. 1995). Credibility determinations also bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).

Dr. Nolan examined Plaintiff in January 2011. (Tr. 327-330.) He opined that Plaintiff could perform the lifting requirements of light work; had no restrictions in standing, walking, or sitting; and should minimize head and neck bending, twisting, turning, and pushing or pulling with her upper extremities. (Tr. 238.) The ALJ gave great weight to Dr. Nolan's opinion about

Plaintiff's ability to lift, stand, walk, and sit, but he rejected Dr. Nolan's opinion limitations involving bending, twisting, turning, pushing, or pulling. (Tr. 25.) The ALJ rejected this portion of Dr. Nolan's opinion because he found the limitations were not consistent with the longitudinal record. (Tr. 25.) Specifically, the ALJ noted that nine months after Dr. Nolan's examination, Plaintiff displayed full range of motion in her neck, and normal movement in all extremities. (Tr. 25.) Moreover, earlier examinations which preceded Dr. Nolan's also document full range of motion in Plaintiff's upper extremities, as well as neck range of motion without significant limitations. (Tr. 25.)

The Court finds the ALJ's interpretation of the medical evidence is supported by the record. Examinations by Plaintiff's treating physician in 2002 revealed good range of motion and no significant complaints related to Plaintiff's neck, back, or shoulders. (Tr. 247, 251.) In June 2010, when Plaintiff sought treatment after tripping over her dog, the treating physician noted Plaintiff was able to move all her extremities "equally well without any localized pain, weakness, or instability" during the examination, and her back, neck, and shoulder were all pain free. (Tr. 302.) Finally, nine months after Dr. Nolan examined Plaintiff, she saw her primary care provider for complaints of bone and joint pain with headaches, but demonstrated a full range of motion in her neck and "normal movement of all extremities." (Tr. 354-55.)

The ALJ found Dr. Nolan's opinion as to Plaintiff's limitations involving bending, twisting, turning, pushing, or pulling to be contradicted by the medical findings of other providers, a finding which is supported by the record. As such, the ALJ provided a specific, legitimate reason for rejecting Dr. Nolan's opinion. *Tommasetti*, 533 F.3d at 1041.

8 - OPINION AND ORDER -

B.  **Physical Therapists Deal and Kershaw**

While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other sources" can be used to determine the severity of that impairment and how it affects the claimant's ability to work. 20 C.F.R. § 404.1513(a), (d). Physical therapists are "other sources." 20 C.F.R. § 416.913(d)(1).

To disregard the opinion of a non-acceptable medical, or lay, source, the ALJ need only provide a reason that is "arguably germane" to that witness. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir.2001); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223–24 (9th Cir.2010). In rejecting such statements, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis . . . if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citations omitted).

In August 2004[1], physical therapist Lori Deal, MSPT, performed a functional capacity evaluation on Plaintiff (Tr. 267-75). This evaluation was based on Plaintiff's self-reports and a battery of aptitude tests. (Tr. 267-76.) Ms. Deal opined that Plaintiff could lift and carry ten pounds occasionally. (Tr. 272.) She also opined that Plaintiff could frequently sit, stand, or walk, and could occasionally kneel, but that strenuous walking should be avoided due to Plaintiff's hypertension. (Tr. 273.) Ms. Deal also opined Plaintiff could use her hands bilaterally within normal limits, but could not lift her arms overhead bilaterally, and that Plaintiff could rarely squat or climb stairs. (Tr. 273.)

---

[1] The ALJ decision refers to an April 2004 evaluation with Ms. Deal, but the correct date as set forth in the record is August 4, 2004. (Tr. 267.)

The ALJ gave some weight to Ms. Deal's opinion, finding that her opinion that the claimant could frequently sit, stand, or walk supported by her examination of the Plaintiff. (Tr. 24.) However, at the time of Ms. Deal's evaluation Plaintiff did not have access to her blood pressure medication, and the ALJ noted that Plaintiff's hypertension had not been symptomatic since 2010. (Tr. 24.) Moreover, the ALJ found Ms. Deal's examination with respect to Plaintiff's neck and upper extremities differed significantly from findings both before and after the examination. (Tr. 24.) Finally, after Ms. Deal's examination and beginning in 2005 Plaintiff began working full-time as a gas station attendant, which would not be consistent with Ms. Deal's opined limitations on Plaintiff's abilities to squat, climb stairs, kneel, or frequently reach over-the-shoulder-bilaterally. (Tr. 24-25.)

In February 2010, physical therapist Michelle Kershaw performed another functional capacity evaluation of Plaintiff. (Tr. 277-85.) Again, the examination consisted of a number of aptitude tests and Plaintiff's self-reporting. (Tr. 277-85.) Ms. Kershaw opined that Plaintiff could lift and carry up to ten pounds occasionally, but could not lift above the waist due to limited shoulder range of motion. (Tr. 283.) She also opined that Plaintiff could perform the lifting and carrying requirements of sedentary work, should avoid overhead reaching, could occasionally reach forward or squat, and could infrequently bend. (Tr. 285.)

The ALJ gave little weight to Ms. Kershaw's opinion for several reasons. He noted that Ms. Kershaw's opinion contained internal inconsistencies because she observed that sitting and standing were well-tolerated by Plaintiff and that Plaintiff's performance on the treadmill test was consistent

with medium exertional work. (Tr. 25.) The ALJ also noted that Ms. Kershaw's opinion was inconsistent with the medical record and work history. (Tr. 25.)

The ALJ gave several germane reasons for discounting the "other source" opinions of physical therapists Deal and Kershaw. In addition, it can be reasonably inferred that the ALJ rejected the physical therapists' assessments for the same reasons he discredited Plaintiff's subjective symptom statements, as discussed below. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (when an ALJ does not explicitly disregard a medical provider's opinion, the court may nevertheless affirm a tacit rejection by drawing "specific and legitimate inferences" from the ALJ's decision); *see also Molina*, 674 F.3d at 1114–22 (noting that "an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims") (citation and internal quotations omitted). For these reasons, the ALJ's evaluation of Ms. Deal's and Mrs. Kershaw's opinions is upheld.

## II. The ALJ's Evaluation of the Plaintiff's Credibility

Plaintiff also contends the ALJ erred by providing inadequate justification for rejecting Plaintiff's testimony regarding the severity of her symptoms causing her mental limitations. The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue*, 504 F.3d 1028,

1036 (9th Cir. 2007) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A general assertion that the plaintiff is not credible is insufficient; the ALJ "must state which [subjective symptom] testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.*

Examples of clear and convincing reasons include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistent statements, daily activities inconsistent with the alleged symptoms, a sparse work history, or testimony that is vague or less than candid. *Tommasetti*, 533 F.3d at 1040. Inconsistencies in a claimant's testimony, including those between the medical evidence and the alleged symptoms, can serve as a clear and convincing reason for discrediting such testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Failure to seek medical treatment may also be a clear and convincing reason to reject a claimant's subjective statements. *Burch*, 400 F.3d at 681; *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989); *see also* SSR 96-7p, 1996 WL 374186 (July 2, 1996).

Credibility determinations are within the province of the ALJ. *Fair*, 885 F.2d at 604 (citing *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988)). Where the ALJ has made specific findings

justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, the role of the reviewing court is not to second-guess that decision. *Id.*

Here, The ALJ found the Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but he found the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her mental symptoms not credible because the Plaintiff's medical record does not support her hearing testimony and the Plaintiff's self-reported work history supports a finding that she can return to past work.

### A.    Medical Records

The ALJ provided several valid reasons to support his finding that the Plaintiff's medical record does not support her hearing testimony. He found that the treatment records for Plaintiff's headaches indicated that they were infrequent and well-controlled by medication, despite her allegation that she has "constant" headaches that prevent her from working. (Tr. 23-24.) Specifically, the ALJ noted that when examined in April 2004, Plaintiff stated that her headaches would cause her to miss a day of work "every couple of months." (Tr. 23, 268.) When treated in emergency care in November 2009, Plaintiff complained of nausea and photophobia, but appeared alert, lucid, and fully oriented, and when pain medication was administered her headache resolved. (Tr. 23, 300-301.)

During a functional capacity evaluation in February 2010, Plaintiff stated her migraine headaches occurred about once every three months. (Tr. 23, 278.) In May 2010, Plaintiff was treated twice for headaches related to hypertension; each time, she appeared in no apparent distress,

13 - OPINION AND ORDER -

her neurological findings were benign, and her headache resolved with conservative treatment. (Tr. 23, 314-16.)

When she was examined in 2011, Plaintiff reported that she had four migraine headaches in the prior year and that she was not taking any medication for headaches at the time. (Tr. 23, 327.) Finally, at the hearing in June 2012, the Plaintiff testified that she had not had to use prescribed medication for her headaches for three months prior to the hearing. (Tr. 23, 40.)

The ALJ did not err by discounting Plaintiff's testimony because it was inconsistent with the medical record. Plaintiff alleged she has "constant" headaches that prevent her from working, but the treatment records indicated the headaches were infrequent and well-controlled by medication. An ALJ may discount a claimant's pain complaints when the ALJ has reasonably inferred that the medical record shows the complaints are well-controlled by medical treatment. *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003).

The ALJ engaged in an even more in-depth analysis of the medical records concerning the nature and severity of Plaintiff's neck pain and alleged limited ability to use her upper extremities. The ALJ noted that Plaintiff reported the onset of pain in her neck and right shoulder in July 1998. An MRI of her cervical spine was conducted in September 1998, which revealed a small broad disc bulge at C3-C4, without stenosis, as well as a tiny disc protrusion at C5-C6, again without stenosis. (Tr. 22, 221-225.) In March 1999, Plaintiff underwent a cervical discography. While provocation of the C5-C6 disc produced pain, provocation of the C6-C7 and C4-C5 disc were normal and not painful. (Tr. 22, 226.)

Plaintiff was examined by a treating physician in October 2001, and exhibited some limited forward flexion in her neck, but her cervical range of motion was normal otherwise. (Tr. 22, 265-66.) She displayed full upper extremity strength bilaterally and no sensory deficits, and her gait was normal. (Tr. 22, 265-66.) Examinations by her treating physician in November and December 2001, and April 2002 all noted full range of motion in all of her upper extremity joints, in addition to full bilateral strength. (Tr. 22, 251-54.) Her neck range of motion was improved, without significant limitations. (Tr. 22, 251-54.)

During the August 2004 functional capacity evaluation with Ms. Deal, Plaintiff displayed intact sensation and balance. (Tr. 22, 268.) Her reflexes were diminished at C5 and C7 bilaterally, but were normal at C6. (Tr. 22, 268.) Her cervical range of motion, in contrast to her examinations in 2001 and 2002, was significantly limited in all planes, and she also exhibited bilateral deficits in her shoulder flexion, abduction, and internal rotation. (Tr. 22, 270-71.) Despite these findings, she could lift and carry eleven pounds and her grip strength was within normal limits (Tr. 22, 267-75.)

During the February 2010 functional capacity evaluation with Ms. Kershaw, Plaintiff exhibited restricted range of motion in her cervical spine and the shoulders bilaterally, weakness in her shoulders. (Tr. 22, 279.) Her grip strength was in normal limits. (Tr. 22, 286.) When examined by treating physicians in May 2010 and June 2010, she exhibited a supple neck without neck pain and could move all extremities without pain or weakness. (Tr. 22, 303, 315.)

During the consultative examination with Dr. Nolan in January 2011, Plaintiff exhibited restricted range of motion in her cervical spine and her bilateral shoulders. (Tr. 22-23, 327-28.)

She displayed normal gait and balance, and had full motor strength in her bilateral deltoids, shoulder rotators, and other upper extremity muscle groups with the exception of 4/5 strength bilaterally in the dorsal side of her forearms. (Tr. 22, 327-330.) April 2011 x-rays of Plaintiff's shoulders found mild-to-moderate narrowing of the acromioclavicular (AC) joint on the right, with mild narrowing of the AC joint on the left. (Tr. 23, 348.) A June 2011 CT scan of Plaintiff's neck showed a mild disc osteophyte at C3-C4, with mild canal and bilateral foraminal narrowing, as well as moderate C4-C5 disc space narrowing. (Tr. 23, 346-47.) Finally, during an October 2011 examination with her treating physician, Plaintiff displayed full range of motion in her neck, and normal movement in all extremities. (Tr. 23, 354-55.)

With respect to Plaintiff's alleged neck pain and upper extremity limitations, Plaintiff argues that a finding that the objective medical evidence was not consistent with the debilitating level of pain Plaintiff alleged is not a legitimate reason upon which to discount a claimant's pain testimony. *See Gonzales v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). True, an ALJ cannot consider whether subjective complaints of pain comport with the objective evidence as the *only factor* supporting the ALJ's credibility assessment. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Where, as here, however, the ALJ provides other legitimate bases for rejecting the Plaintiff's testimony, this factor may be considered.

### B. Work Activity

The ALJ also found that Plaintiff's work activity during her alleged period of disability undermined her credibility. (Tr. 23.) Evidence that a claimant left her last job for reasons other than her alleged impairments supports an adverse credibility determination. *Tommasetti*, 533 F.3d

16 - OPINION AND ORDER -

at 1040; *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Plaintiff claimed a disability onset date of July 15, 1997. (Tr. 134.) However, Plaintiff worked as a gas station attendant in 2005-06, and performed so well that after seven months she was promoted to assistant manager. (Tr. 47-48.) As the ALJ noted in his decision, Plaintiff explained at the hearing that she left her job in 2006 to care for her injured daughter. (Tr. 23, 47.) When Plaintiff attempted to return to this employer, she was not offered continued employment. (Tr. 23, 47, 52.) Plaintiff indicated the denial of re-employment was influenced by her history of absences due to headaches, but the ALJ found this explanation in direct contrast with the history Plaintiff provided her treating doctors as to the frequency of her headaches. (Tr. 23-24.) The ALJ reasonably cited Plaintiff's work activity in 2005-06 as a factor that undermined her credibility.

### III. The ALJ's Evaluation of the Lay Witness's Credibility

The Plaintiff also argues that the ALJ improperly rejected the lay testimony of her sister-in-law, Tina Croft. The ALJ must to provide "germane reasons" for rejecting lay testimony. 20 C.F.R. § 404.1513(d)(1); *Lewis*, 236 F.3d at 511. Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. *Lewis*, 236 F.3d at 511. It is not reversible error to reject lay testimony when "the lay testimony described the same limitations as [claimant's] own testimony, and the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony." *Molina*, 674 F.3d at 1122.

In November 2010, Ms. Croft stated that Plaintiff had limitations in her abilities to walk, lift, stand, reach, bend, and climb stairs. (Tr. 24, 179-187.) She also reported that Plaintiff could walk a few city blocks before needing rest, and that she could not lift over five pounds. (Tr. 24,

179-87.) She also declared that Plaintiff went camping in the summer, left her home daily, cooked daily, and cleaned several days per week. (Tr. 24, 179-87.) The ALJ gave some weight to Ms. Croft's statements as to Plaintiff's abilities to reach and lift, but found no limitations in her abilities to walk, stand, bend, or climb stairs. (Tr. 24.)

The ALJ reasoned that Ms. Croft's statements in this regard were not consistent with medical records, as Plaintiff routinely exhibited full motor strength in her upper extremities and has consistently exhibited intact gait and balance, full lumbar spine and lower extremity mobility, and full lower extremity strength. Moreover, the ALJ noted Plaintiff's work history supports a finding that she can return to full-time light work despite her impairments. Finally, to the extent Ms. Croft's statement described the same limitations as Plaintiff's own testimony, the ALJ's reasons for rejecting Plaintiff's testimony apply with equal force.

## IV.    The ALJ's Step Four and Step Five Findings

Finally, Plaintiff argues the ALJ's findings at step four and step five of the sequential process are not supported by substantial evidence because the ALJ did not ask the VE any hypothetical questions and, as such, omitted from consideration the limitations assessed by physical therapists Deal and Kershaw, examining physician Dr. Nolan, as well as the allegations of limitations from Plaintiff and her lay witness. According to Plaintiff, had the ALJ properly credited the evidence, her RFC should be for less than the full range of sedentary work which would eliminate Plaintiff's ability to perform past relevant work as a gas station attendant.

As noted above, at step four the ALJ found Plaintiff could return to her past relevant work as a gas station attendant. (Tr. 26.) The ALJ based this finding on Plaintiff's RFC to perform the

full range of light work as defined by 20 C.F.R. § 416.967(b), except she can frequently reach over-the-shoulder bilaterally and on the fact that Plaintiff's past relevant work as a gas station attendant, as described by the Plaintiff, was consistent with light exertional work as defined in 20 C.F.R. § 404.1567(a). (Tr. 26.)

The Court already concluded that the statements of Plaintiff and her lay witness, as well as the opinions of Dr. Nolan and physical therapists Deal and Kershaw were appropriately discredited by the ALJ, and there is no indication, outside of this evidence, that Plaintiff suffers from functional limitations beyond those already assessed in the RFC. Accordingly, the ALJ's determination that Plaintiff can perform her past relevant work at stop four is not in error. Because the ALJ's correct step four determination is dispositive, the Court need not address Plaintiff's challenge to the alternative step five determination.

## CONCLUSION

For these reasons, the Court AFFIRMS the Commissioner's decision and DISMISSES Plaintiff's case with prejudice.

IT IS SO ORDERED.

DATED this 16th day of March, 2015.

John V. Acosta
United States Magistrate Judge